EVELYN FIXEL, Plaintiff, v. IRVING FIXEL, Defendant.

Supreme Court, Special Term, New York County, January 27, 1955.

*Samuel L. Teitler* for plaintiff.

*Leon Jaffe* for defendant.

WALTER, J.  The parties hereto were married in New York January 11, 1948, and live in New York.  A son, Richard, was born to them in February, 1949, and a girl, Toby, was born to them in November, 1951.  Plaintiff wife left her marital home early in the day on March 23, 1954, taking the children and some of the household furnishings with her and causing the remaining household furnishings to be put in storage; and she brings this action for a separation on the ground of cruel and inhuman treatment.

She says that on the evening of March 22, 1954, defendant came home in an angry mood and after harsh and unpleasant words grabbed her by the throat, called her vile names, said he was going to kill her, dragged her toward a window, and said he was going to throw her out of it; that she escaped from his grasp only when he loosened one hand from her throat in order to use it to open the window; that she then ran into a bedroom in their apartment other than the bedroom defendant occupied, and barricaded herself therein and remained there all night; and when she concluded defendant was taking a shower around six or seven o'clock in the morning of March 23d she took the children and went with them to the apartment of her parents in the same apartment building, where she has since remained.

Defendant denies that occurrence, and in his demeanor on the stand and in the courtroom during the trial, I was unable to detect anything which led me to believe that he is the kind of man who would do such a thing.  But, on the other hand, plaintiff testified with clarity, precision and straightforwardness and went through her ordeal on the witness stand with a dignified calm and an emotional stability which in my opinion preclude any idea that she either imagined the incident or invented or concocted or unduly embellished her narrative of it; and defendant's testimony boils

down to the incredible assertion that plaintiff simply walked out for no reason at all. Furthermore, the patience, diligence and skill of counsel have brought before me a veritable myriad of incidents, covering the entire period of the married life of the parties and ranging from the trivial to the tragic, the total effect of which is to convince me that from the time of the marriage defendant harbored and was greatly influenced by three ideas: one, that he was entitled to, even if he had not been actually promised, a dowry of $20,000 from plaintiff's parents; two, that plaintiff was unduly attached to her parents and insisted upon keeping them too much in her life to an undue exclusion of himself; and, three, that plaintiff was not sufficiently considerate of his mother and brother. Those ideas exasperated defendant and led him to do and say things which he would not have done except under stress of a feeling of fancied wrongs. To those things was added, about March 16, 1954, defendant's discovery that plaintiff had represented to him that she was seven years younger than she actually was. That exasperated defendant still more; and subsequent acts of defendant after the separation, particularly the disgraceful incidents of March 23d, July 30th and August 27th, which are established by testimony of witnesses other than plaintiff and defendant, all lead to the conclusion that plaintiff has established extreme cruelty and conduct which make it unsafe and improper for plaintiff to cohabit with defendant. She is accordingly entitled to a judgment of separation as prayed for.

Plaintiff obviously is the proper person to have the custody of the children of the marriage, and the difficulties which were encountered in connection with the right of visitation which was accorded defendant in the order made upon the motion for alimony *pendente lite* lead me to the conclusion that there should be no visitation which brings defendant into contact with plaintiff or her parents or which brings plaintiff or her parents into contact with defendant.

If the parties, with the assistance of counsel, can arrange for a leaving of the children at some school, nursery or other recognized facility for day care for children, where defendant may see them at a stated time, provision will be made that plaintiff shall take the children to such place and leave them, that defendant may then see them there, and that plaintiff shall then call and get the children at that place after defendant has left that place. I will hear counsel on the settlement of the judgment on the question whether defendant should be allowed to take the children from such school, nursery or other recognized facility.

The remaining question is the amount of alimony, and considering defendant's past earnings and present earning capacity, the present cost of living, and the incidence of income taxes, I think $175 per week is as near right as it is possible to make it.

I direct the entry of judgment accordingly.

The foregoing constitutes the decision required by the Civil Practice Act and judgment is to be entered thereon.

(February 11, 1955.)

MOTION to set aside decision and grant new trial is in all respects denied, with $10 costs. The Judicial Council may or may not have been wise in urging that judges be given the right to correct their own errors, but its apparent failure to perceive the manifest differences between trials before a jury and trials without a jury seems truly appalling. A judge frequently may disagree with a jury's verdict and a motion to him to set aside a jury's verdict is not at all presumptuous or impertinent; but a judge is not apt to disagree with himself and a motion to him to set aside his own decision is to my mind both presumptuous and impertinent except under the rarest of circumstances; and even when good grounds for such a motion are believed to exist (something other than a mere rehash of what has been considered) the least that counsel can do is to make discreet inquiry as to whether the particular judge involved feels inclined to agree that such a motion should be made in the particular case in hand and get the permission of that judge before bringing on a motion of that sort. (See *Ellis* v. *Central Hanover Bank & Trust Co.,* 198 Misc. 912.)